# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

TRC, INC.,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 2:09-CV-00205-KJD-GWF

**ORDER**

    Currently before the Court is Defendant, the United States' Motion for Summary Judgment (#14). Plaintiff filed a Response in Opposition (#16), to which Defendant filed a Reply (#17). The Court has considered the Motion, Response, and Reply, as well as Plaintiff's Supplemental Authorities (#18), and grants Defendant's Motion for the reasons set forth herein.

**I. Background**

    Plaintiff TRC, Inc. ("TRC") is a wood-framing subcontractor located in North Las Vegas, and operated under the authority and direction of company president Richard P. Harris, III ("Harris"), who has been the only officer at TRC since its formation in 1988. (#14-4 ¶ 3.) TRC hired Todd Noel ("Noel") on January 1, 2002, to serve in an information technology role. Subsequently, he was designated as office manager. His responsibilities included overseeing TRC's financial books and records during the period at issue, including accounts payable, accounts receivable, and TRC's

overall budget. Additionally, Noel was responsible for TRC's financial affairs relating to the deposit of federal employment taxes and the preparation and filing of payroll forms with the Internal Revenue Service ("IRS"). TRC did not have any written payroll policies or procedures in place during the periods in question. At no time during the periods in question did TRC employ the services of an independent accountant to audit or review TRC's books and records, or implement any internal controls to monitor Noel in spite of the fact that Noel had no prior experience processing payroll withholdings.

During the second quarterly period, beginning April 1, 2004, and ending June 30, 2004, TRC failed to timely file its federal employment tax return. Additionally, TRC failed to timely make deposits, and to timely pay its federal employment tax liabilities for the second and third quarters of 2004. As a result, the IRS assessed penalties and interest against TRC in the following amounts,

**For the period ending June 30, 2004**:
Late Filing (of tax return) $6,106.15
Failure to Deposit (tax liabilities) $6,260.50
Failure to Pay (tax liabilities) $503.89
Interest $320.47

**For the period ending September 30, 2004**:
Failure to Deposit (tax liabilities) $10,223.88
Failure to Pay (tax liabilities) $1,022.39
Failure to Deposit (tax liabilities) $5,111.94
Interest $700.69

TRC filed its Complaint in this Court on February 2, 2009, seeking recovery of said Internal Revenue Tax penalties.[1]

---

[1] Specifically, TRC's Complaint seeks a refund for penalties imposed for its failure to (1) make timely deposits of federal employment tax liabilities under 26 U.S.C. § 6656(a) for the second and third quarters of 2004, (2) timely pay said liabilities under 26 U.S.C. § 6651(a)(2) for the second and third quarters of 2004, and (3) timely file its federal employment tax return under 26 U.S.C. § 6651(a)(1) for the second quarter of 2004. Between April 28, 2004 and June 9, 2004, TRC did not timely deposit payroll taxes due on the following dates and in the following amounts: (1) $3,518.19 due on April 28, 2004; (2) $7,731.30 due on May 5, 2004; (3) $6,265.90 due on May 12, 2004; (4) $2,848.90 due on May 12, 2004; (5) $6,265.90 due on May 19, 2004; (6) $3,906.24 due on May 19, 2004; (7) $3,890.24 due on June 3, 2004; (8) $2,977.20 due on June 3, 2004; (9) $3,820.12 due on June 3, 2004; (10) $2,2062.31 due on June 9, 2004; and (11) $6,797.32 due on June 9, 2004. (Statement of Facts ¶ 11.)

2

Together, the penalty and interest assessments at issue amount to $30,249.91.[2] It is undisputed that TRC failed to timely deposit and pay its federal employment taxes for the second and third quarters of 2004, and to timely file its federal employment tax return for the second quarter of 2004. TRC has fully paid said employment taxes and associated penalties and interest for the periods at issue. Previous to filing this suit in federal court, Plaintiffs sought abatement of its penalty payments from the IRS, and IRS Appeals Office. (Motion for Summ. J. Ex. G #14-10; Halverson Decl. #16 at 8.) TRC's request and appeal were both denied. Subsequently, TRC submitted a formal Form 843 in August of 2006, which was also denied. (Id. at ¶ 8.)

In this action TRC seeks to recover its penalty payments pursuant to 28 U.S.C. § 1346(a) on the grounds that its failure to timely pay its employment taxes was "due to reasonable cause and not due to willful neglect," which is a defense to the imposition of the penalties under 26 U.S.C. §§ 6651(a)(1), (2) and 6656(a).

Defendant's Motion seeks that the Court grant summary judgment against Plaintiff, averring that TRC cannot establish that its failures to timely pay its tax liabilities were due to reasonable cause. Specifically, Defendant argues that TRC cannot establish reasonable cause because: (1) TRC had sufficient funds on hand to pay the taxes when they were due, (2) TRC preferred other creditors over the United States, and (3) TRC failed to employ any internal controls to monitor the controller's performance of his duties. Additionally, Defendants aver that TRC's argument regarding undue financial hardship cannot be brought before this Court because TRC failed to raise said argument in its request for abatement and appeal before the Internal Revenue Service.

Plaintiff, in opposition, argues that the determination of reasonable cause requires a factual assessment of the taxpayer's financial situation, and has attached Declarations of TRC's in-house

---

[2] In its Response to Defendant's Motion, TRC "concedes that the late filing penalty of $6,106.15 was properly assessed and paid and that TRC's claim for refund of the amount of that penalty should be dismissed." Accordingly, the Court examines only Plaintiff's claim for a refund of the late payment penalties. (See #16 at 2.)

3

C.P.A., Larry Halverson, and company owner Richard Harris, to demonstrate that TRC was "teetering on [the] brink of bankruptcy" during the relevant time period.[3] Additionally, TRC alleges that during discovery it produced canceled checks and bank statements which showed what money came in to the company, and how it was spent during the time period at issue. TRC argues that the payments made to entities other than the IRS were necessary to complete projects and avoid default.

**II. Summary Judgment Standard**

The Court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323.

The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." F.T.C. Publishing Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997). Therefore, vague and unsubstantiated testimony, even when given under oath, will not preclude summary judgment. "When a motion for summary judgment is

---

[3] The Court notes that Halverson was hired in November 2004, only after TRC had failed to meet its payroll obligations, and Harris had been in contact with the IRS regarding TRC's failure to timely file its employment tax return. (Statement of Facts ¶¶ 11–12, Harris Decl. ¶¶ 5–6.)

4

properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

**III. Analysis**

### A. Reasonable Cause

The Internal Revenue Code imposes mandatory penalties for failure to file returns, or to pay taxes in a government depository unless the taxpayer can demonstrate that such failure was due to "reasonable cause and not due to willful neglect" 26 U.S.C. §§ 6651(a)(1), (a)(2) and 6656(a). Addressing the application of Section 6651(a)(1), the Supreme Court established that the taxpayer bears the "heavy burden of proving both (1) that the failure did not result from 'willful neglect' and (2) that the failure was 'due to reasonable cause.'" U.S. v. Boyle, 469 U.S. 241, 245 (1985).

The Supreme Court has described willful neglect as a "conscious, intentional failure or reckless indifference" Id., at 690. Moreover, the treasury regulation interpreting the "reasonable cause" provision of Section 6651 states, in pertinent part:

> If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161-1(b) of this chapter) if he paid on the due date.

26 C.F.R. § 301.6651-1(c)(1)

Additionally, the Regulation provides that, in making a reasonable cause determination, "consideration will be given to . . . the amount and nature of the taxpayer's expenditures in light of the income . . . he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax". 26 C.F.R. § 301.6651 1(c)(1). The Ninth Circuit has further interpreted the Regulation to require that a party seeking to have a penalty excused must

produce "evidence of what funds it did have on hand each time a payroll tax was due, and . . . evidence of how it spent those funds in lieu of paying its taxes. Synergy Staffing, Inc. v. U.S. I.R.S., 323 F.3d 1157, 1160 (9th Cir. 2003). A showing of financial trouble, without more, is not sufficient to meet the reasonable cause standard. Id.

In its Opposition, Defendants argue that "during discovery TRC produced to the Government all its canceled checks and bank statements . . . [which] showed what money came in and how it was spent during the periods at issue." (#16 at 4.) The Court has reviewed the declarations and exhibits, including the bank records Plaintiff has filed in this action, and finds no basis upon which a reasonable jury could return a verdict for TRC, as the record demonstrates nothing more than the potential that TRC was experiencing financial trouble. Moreover, the evidence demonstrates that on all but two occasions Plaintiff had sufficient funds to pay the taxes owing for a given payroll period, and to make the required tax deposits for that week, but chose to use the money for other purposes.[4]

In an attempt to meet the Ninth Circuit's specific requirement to prove financial hardship, TRC attaches to its Response the Declaration of Harris, along with a list of eleven check numbers TRC issued during the relative time period, and a brief description of each check amount and the alleged necessity of payment. Said evidence and explanation fails however, to meet Plaintiff's burden under Synergy as it remains unclear why such payments took precedence over tax payment obligations. For example, Harris lists check #23183 for $20,000 dated April 6, 2004, from TRC's U.S. Bank payroll account to its general checking account as a "transfer of funds to cover other company debt obligations . . . necessary to pay bills that would allow TRC to stay in business . . . ." (#16 at 11 ¶ 8.) Additionally, Harris lists check #54725 for $10,000 dated June 17, 2004, from TRC's Bank of America general checking account to Harris as a repayment of a loan "in order for []

---

[4] TRC's attached bank records demonstrate that sufficient funds existed in its accounts on all but two occasions when taxes were due, however TRC argues that certain checks were outstanding on said tax deadlines that would have overdrawn TRC's accounts. (Statement of Fact ¶ 10; Camacho Decl. ¶¶ 14–15; #16 at 12.)

6

Harris to pay his personal debt obligations." (Id.) Checks ##54620, 54656, 54668, 54754 dated between April 20, 2004 and July 21, 2004, for over $3,500 each, were made to Synergy, LLC for office rent. (Id.) Check #54655 for $39,000 dated May 19, 2004; check #54712 for $25,937.50 dated May 25, 2004; check #54754 for $22,262.57 dated July 21, 2005; and check #54755 for $13,101.63 dated July 21, 2004, were all made in relation to payments for a loan installment plan to "Dakem, a friend/associate in business." (Id.) Though Harris states that these checks were necessary to prevent default of TRC's note obligations to Dakem and to prevent default by Synergy LLC, the Court finds said evidence and explanation lacking in necessary detail. Plaintiff's pleadings fail to set forth sufficient justification of TRC's payments to Dakem and other creditors in place of its obligation to timely pay its tax liabilities.

Though not binding in this jurisdiction, the Court finds guiding, the reasoning of the District Court of Oregon in a similar case brought against the IRS by an employer seeking tax penalty abatement by alleging that its failure to pay federal employment taxes as a result of financial hardship. Pacific Wallboard & Plaster Co., 319 F.Supp.2d 1187 (D. Or. 2004). Though the factual circumstances differ markedly—the controller in Pacific Wallboard, had secretly embezzled funds from the Plaintiff company over a number of years, and the company had omitted tax payments for approximately 150 consecutive weeks—the Oregon court found that it was the company officers' conscious decision not to pay the IRS "choosing to use the money for other purposes they considered more pressing in light of the company's circumstances" that contradicted the company's claim of reasonable cause. To avoid converting the obligation of tax-paying "into a largely voluntary undertaking" the Pacific Wallboard court noted that besides demonstrating the extraordinary circumstances that warrant excusing a tax penalty, the evidence provided by plaintiff in opposition to summary judgment failed to provide a basis for reasonable cause. Here too, the evidence presented by Plaintiff fails to provide a basis upon which reasonable cause could be found.

Although Synergy requires a taxpayer to demonstrate more than evidence of financial trouble alone, simply providing check payment amounts or a list of creditors existing during the relevant time period is also insufficient to establish reasonable cause. As in Pacific Wallboard, TRC claims it consciously made payments to creditors in lieu of timely paying tax liabilities, and the record contains absolutely no evidence that TRC attempted to make partial payment of its tax liabilities, or sought an extension of time or to arrange a payment plan with the IRS. As pointed out by Defendants, during the relevant time period, Plaintiff made over $150,000 in payments to entities owned by Harris.[5] Plaintiff avers that said payments were necessary to pay rent for the building occupied by TRC, the mortgage on the property, for equipment essential to completing projects, and to avoid default on certain loan payments. The record is devoid however, of any evidence that Plaintiff attempted to borrow additional funds or to delay repayment of loans or other obligations.

The record contains minimal if any information, regarding the expenses Plaintiff chose to pay with the available funds, or why some of its payments could not have been deferred. There is no evidence that the company would have lost business or contracts had it timely paid its tax liabilities, or of any instance where action was taken against TRC by creditors for money owed. Rather, the evidence demonstrates that TRC simply placed other creditors above the IRS on its payment priority list.

The treasury regulations additionally define an undue hardship as "more than an inconvenience to the taxpayer. It must appear that a substantial financial loss, for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer for making payment on the due date. . . . 26 C.F.R. § 1.6161-1(b). As stated above, under Synergy and its progeny, it is not enough

---

[5] Specifically, Defendant states that TRC made several large payments to Harris, or companies owned by Harris including TRC Equipment, LLC and 2804 Synergy, LLC, both owned by Mr. Harris, for approximately $150,901.70 over the periods at issue. (Statement of Facts ¶ 11). TRC also issued checks totaling over $105,000 to, 2804 Synergy, LLC and TRC Equipment, LLC between April 20, 2004 and May 25, 2004. (Id.)

just to claim financial hardship.  Here, though the record includes a list demonstrating the funds TRC had on hand during the relevant period, it neglects to show that substantial financial loss required the company to spend those funds in lieu of paying taxes.  See 26 C.F.R. § 301.6651 1(c)(1).  Accordingly, the Court finds that Plaintiff has not presented a genuine issue of material fact and therefore that Defendant is entitled to judgment as a matter of law.

### B. Payment Priority

Pursuant to  26 U.S.C. §§ 3101; 3102(a), (b); 3402; and 3403, employers are required to withhold federal social security taxes (Federal Insurance Contributions Act, or "FICA" taxes) and income taxes from the salaries and wages paid to their employees and to pay over the withheld amounts to the United States.  Employers are also required to pay over their own contributions to the social security system. 26 U.S.C. § 3111.   The income taxes and FICA taxes deducted from employees' salaries are considered debts of the employees to the federal government on earned income.  Although the employer collects the taxes and is liable for their payment, the withheld taxes are not the property of the employer.  They are a part of the wages held in trust for the benefit of the government. 26 U.S.C. § 7501.

Such trust funds are for the exclusive use of the United States and may not be used for any other purpose.  It is no excuse that, as a matter of sound business judgment, the money is paid to suppliers and for wages in order to keep the corporation operating.  See, e.g., Thibodeau v. United States, 828 F.2d 1499, 1506 (11th Cir. 1987).

26 C.F.R. § 301.6651-1(c)(2) provides:

> In determining if the taxpayer exercised ordinary business care and prudence in providing for the payment of his tax liability, consideration will be given to the nature of the tax which the taxpayer has failed to pay. Thus, for example, facts and circumstances which, because of the taxpayer's efforts to conserve assets in marketable form, may constitute reasonable cause for nonpayment of income taxes may not constitute reasonable cause for failure to pay over taxes described in section 7501 that are collected or withheld from any other person.

26 C.F.R. § 301.6651-1(c)(2). Section 7501 governs the employee portion of taxes which are collected or withheld by an employer as salaries are disbursed. In relevant part, Section 7501 establishes that "the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501(a). Accordingly, the taxes an employer withholds from and pays on behalf of its employees are often called "trust fund taxes." Begier v. Internal Revenue Service, 496 U.S. 53, 55–56 (1990).[6]

Although it is the duty of the court to weigh all of the factors identified in the regulations, "it will be the rare case where the government is made 'the unwilling partner in a floundering business' without the employer incurring the duty to pay a penalty for having made such a choice" to fail to pay trust fund taxes over to the government on a timely basis. Fran Corp. v. United States, 164 F.3d 814, 819 (2d Cir. 1999). As stated above, Plaintiff has failed to demonstrate, as a matter of law, the extraordinary circumstances to warrant the excuse of TRC's tax penalty payments.

### C. Sufficiency of Pleadings

Moreover, even if Plaintiff adduced a genuine issue of fact adequately demonstrating reasonable cause based on financial hardship, it is questionable that Plaintiff sufficiently pled such in its underlying request for abatement and appeal with the IRS. In filing a claim for refund with the IRS, a taxpayer is required to specify each ground on which its claim for refund is based. See 26 C.F.R. § 301.6402-2(b)(1) ("The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.") The Ninth Circuit has explained that these requirements are intended to "ensure that the IRS is given adequate notice of each claim and its underlying facts, so that the IRS may conduct an administrative investigation and determination. See Boyd v. United States, 762 F.2d 1369, 1371 (9th Cir. 1985).

---

[6] The taxes underlying the penalties at issue in this case were comprised of both the FICA and income taxes withheld from employee wages, which are trust fund taxes, and the employer's portion of the FICA tax under 26 U.S.C. §3111

10

1  Additionally, compliance with the specificity requirements of 26 C.F.R. § 301.6402-2(b)(1) is a
2  prerequisite to subject matter jurisdiction over a claim for a refund.  Id. , 762 F.2d at 1371;  Bear
3  Valley Mut. Water Co. v. Riddell, 493 F.2d 948, 950–51 (9th Cir. 1974);  Quarty v. United States,
4  170 F.3d 961, 972–973 (9th Cir. 1999) (footnote omitted).  see also Commissioner v. Lundy, 516
5  U.S. 235, 240, 244, 252 (1996) (noting that under 26 C.F.R. § 301.6402-2(b)(1) a claim for refund in
6  district court must state ground for refund with specificity).  Stated succinctly, a taxpayer cannot
7  recover in a suit for refund on any ground that is different from that set forth in its underlying claim
8  for refund.  Quarty, 170 F.3d 961, 972–973 (citing Bear Valley).

9      Here, the Complaint avers that Plaintiff's failure to timely pay its tax liabilities was due to
10  Noel's "neglect" to timely perform his payroll responsibilities and as a result of "extraordinary
11  circumstances." (Compl. ¶ VIII, Ex. 1.)  Plaintiff admits that only during the discovery phase of this
12  case did TRC for the first time allege that payment of its payroll taxes during the periods at issue
13  would have exposed TRC to financial hardship and risk of bankruptcy.  In its Response to
14  Defendants' dispositive Motion, TRC avers that financial hardship was properly raised in its
15  underlying request for abatement and appeal before the IRS.  TRC's argument however, is not
16  adequately supported by the record.  To buttress its contention that the issue of financial hardship
17  was properly raised before the IRS, TRC claims that the IRS's letter denying its refund claim
18  addresses financial hardship.  Regarding financial hardship however, the letter of denial written by
19  IRS employee Linda Bingham, only provides that "the tax laws also state that financial hardship do
20  not (sic) constitute reasonable cause for removing penalties." (Halverson Decl. ¶ 8.)  This sentence
21  alone fails to adequately demonstrate that the issue of financial hardship was brought in TRC's
22  underlying claim.

23      Other than Halverson's declaration stating that the issue of financial hardship was raised in
24  communications with the IRS, Plaintiff fails to provide any other support for its contention that the
25
26

issue was raised in its underlying refund request.  (See #16 at 12.)  Accordingly, pursuant to 26 C.F.R. § 301.6402-2(b)(1), without more, it is questionable that Plaintiff has adequately demonstrated that this Court has subject matter jurisdiction over TRC's instant claim involving the issue of TRC's financial hardship.

**IV. Conclusion**

      Accordingly, **IT IS HEREBY ORDERED** that the United States' Motion for Summary Judgment (#14) is **GRANTED**.  Judgment to be entered for Defendant.

      DATED this 6th day of January 2011.

_____
Kent J. Dawson
United States District Judge